Atwater *v.* Lockwood.

---

## JEREMIAH W. ATWATER *vs.* URIAH LOCKWOOD.

The plaintiff, a real estate broker, without any express contract of employment with the defendant, introduced to him a person who purchased of him a piece of land. The plaintiff was present during the negotiation between the parties, and at that time spoke disparagingly of the value of the property, and suggested that the price asked by the defendant was too large. The plaintiff was also present with the parties at the consummation of the contract and the delivery of the deed. The sale was brought about by means of the plaintiff, and but for him the parties would not have come together, but during the whole transaction the defendant supposed the plaintiff was acting as the agent

of the purchaser, and never intended to employ him for himself. In an action to recover a commission on the sale, it was held that no contract of employment was implied from the facts in the case, and that the plaintiff was not entitled to recover.

GENERAL ASSUMPSIT, to recover a commission for the sale of land by the plaintiff, a real estate broker ; brought to the Court of Common Pleas, and reserved for advice on the following facts found by the court :

The plaintiff began to deal as a real estate broker in December, 1868, in the town of Greenwich. He had purchased property for himself near Coscob, before March, 1869, at the price of $400 per acre, and owned the same at the time of the sale by the defendant to Oakes, hereinafter mentioned.

Before the first day of March, 1869, the plaintiff met the defendant at Mianus, near Coscob, and said to him, "Captain, I have taken the field as a real estate broker, and intend to develop that part of the town where your eleven acres are, near the railroad," and solicited the sale of the same, which the defendant then and there refused. Immediately after this interview, the plaintiff, traveling on the New York and New Haven Railroad, met a gentleman by the name of Charles H. Oakes, a resident of New Haven, and one whom he had known in a business way for several years, and while on the railroad train the plaintiff told Mr. Oakes that he was a real estate broker. Mr. Oakes inquired where he was buying, and he replied, "near Coscob." Mr. Oakes then asked the plaintiff if there was any good chance for an investment there, and the plaintiff replied that there was a corner lot near where he had bought which was valuable property. He stated that it belonged to Captain Lockwood, but the plaintiff did not know whether he would sell it or not. Mr. Oakes then requested the plaintiff to ask the Captain if he would sell, and inform him by mail. The plaintiff, meeting with the defendant at Coscob soon after the last mentioned conversation, asked him again if his place was for sale, and the defendant replied that he had not yet made up his mind to sell the property, but that his health was not very good, and he had no one to work it. At the third interview between the plaintiff

and defendant, which took place soon after the second, and at Riverside, near Coscob, the defendant, upon inquiry being made of him by the plaintiff, said he had made up his mind to sell that piece of property, and would do so if he could find a purchaser. The plaintiff said he had in his mind a person in New Haven, a friend of his, who might want to buy it, and asked the defendant his price. The defendant said if anybody came along to buy he would put a price on it himself, and would not give the price to the plaintiff.

At the fourth interview between the plaintiff and defendant, (where, did not appear,) the defendant said he had not decided on a price, but if the person the plaintiff had spoken of would come and look at the place, he could do so, and if the man liked it well enough to say " buy," he would be ready to put the price on it. Thereupon the plaintiff wrote to Oakes, saying he had seen Captain Lockwood, and he thought the Captain was disposed to sell. In this letter the plaintiff desired Oakes to come down to Coscob, and stated that he would meet him at the railroad station. Oakes came accordingly, and was met at the station by the plaintiff, who went with him to the land in question. After an examination of the lot, they went to the defendant's house, and not finding him there, went to the village, where the plaintiff introduced Mr. Oakes to the defendant as the gentleman from New Haven, who had come to talk about the ten acre lot. After some general conversation about the property, the defendant and Oakes agreed to meet upon the ground, and they met accordingly on the same day, Oakes accompanied by the plaintiff. Oakes, while they were together upon the ground, asked the defendant his price, and the defendant replied, $400 per acre. The plaintiff thereupon said to the defendant, in the presence and hearing of Oakes, "Aint that rather steep ? You know those shanties near by it will be a great damage to it." The defendant replied that the price was no more than what the plaintiff gave for the property opposite the corner lot. Oakes thereupon took a refusal of the property at that price for about a week. Before the end of the week the defendant

had been notified by the plaintiff that Oakes would take the place, and the plaintiff had been informed by the defendant that he should not consider it a sale unless half the amount was paid down. On receiving a telegram and letter from the plaintiff, informing him of the last communication from the defendant, Oakes came to Greenwich, and was met at the railroad station by the plaintiff, who took him to the defendant. The purchaser then and there agreed to pay half down, and a contract for the sale and a copy thereof were drawn up by the plaintiff, and one of the papers taken by each party. The place in question was deeded by the defendant to Oakes for the consideration of $4,496, being at the rate of $400 per acre, on the first day of April, 1869. The defendant, on the day the deed was given, carried the plaintiff and Oakes in his carriage to the office of the scrivener who drew the deed.

The plaintiff was present at the time, and when the papers of title were passed between the parties he presented his bill to the defendant for a commission, which the defendant refused to pay, saying that he had never employed the plaintiff, and that he supposed him to be acting in behalf of his friend Oakes. The regular commission was 2½ per cent.

During the whole of the transaction the defendant supposed the plaintiff was acting as the agent of the purchaser, and never intended to employ him for himself. And Oakes, after the first conversation on the cars with the plaintiff, supposed the plaintiff was the agent of the defendant, and at the first conversation supposed that he was acting in his own interest. The sale was brought about by means of the plaintiff, and but for him the parties would not have come together. The plaintiff, during the transaction, but not in the presence of defendant or to his knowledge, urged the purchaser to give $400 per acre for the place, and told him that it would be a good investment at that price.

*Olmstead,* for the plaintiff, cited *Glentworth* v. *Luther,* 21 Barb., 145; *Barnard* v. *Monnot,* 34 id., 90; *Wilkinson* v. *Martin,* 8 C. & P., 1; *Burnett* v. *Bouch,* 9 id., 620; *Lincoln* v. *McClatchie,* 36 Conn., 136; *Redfield* v. *Tegg,* 38 N. Y.,

212; *New York & New Haven R. R. Co.*, v. *Schuyler*, 34 id., 30, 53, 58, 59, 60 ; *Chilton* v. *Butler*, 1 E. D. Smith, 150 ; *Cook* v. *Fiske*, 12 Gray, 491, 493, 494; 1 Abbot Dig., secs. 23, 24.

*Child* and *Fessenden*, for the defendant.

PARK, J. The plaintiff cannot recover in this suit unless he establishes the fact that he was employed by the defendant to act for him in the sale of his land. The plaintiff concedes that he was not expressly employed, and the only question for us to determine is whether the facts of the case show an employment by implication of law. The fact is substantially found that the defendant never knew during the transaction of sale that the plaintiff was acting for him, or was rendering any intentional service for his benefit, and we can discover nothing whatever in the case that tended to give him such information. We think it is clear that no person of common understanding, in the place of the defendant, would imagine that the plaintiff was rendering service for him under the expectation of receiving compensation for the same. Indeed, at the time of the sale, and while the defendant was engaged in negotiating with the purchaser in regard to the price, the plaintiff spoke disparagingly of the value of the land, in the presence and hearing of the purchaser, and suggested that the price which the defendant asked for it was too large. This conduct of the plaintiff is in strong opposition to the claim that the plaintiff was then, or had been, acting for the defendant as his agent in procuring the purchaser. Unless the defendant knew while the service was being rendered that the plaintiff was acting for him, or had such information on the subject as would cause a person of ordinary understanding under like circumstances to believe that he was so acting, no implication of employment can be made. A contract is the meeting of the minds of the contracting parties, and where there is no express contract, the party sought to be charged must have such knowledge, or what is equivalent thereto, be-

fore his mind can act on the subject, and assent to the terms of the contract.

We are satisfied from the facts found that no contract existed in this case, and we therefore advise judgment for the defendant.

In this opinion the other judges concurred, except CARPENTER, J., who was absent.